GEWANSKI, Appellant, vs. ELLSWORTH, Respondent.

*October 25—November 13, 1917.*

*Master and servant: Negligence in operating master's automobile:
Liability: Scope of employment.*

1. To render the master liable for negligence in the use of his automobile by a servant it must appear that such use was with his knowledge and consent and was within the scope of the employment and to facilitate the master's business.

2. Efforts of the master to accommodate and assist the servant do

not bring within the scope of the employment acts of the servant otherwise without such scope.

3. Thus, permission given to a servant, at the close of a day's work, to use the master's automobile for the sole purpose of going home and returning to work in the morning, did not render the master liable for injuries caused by the servant's negligent operation of the car while so using it.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

Action for personal injuries. Plaintiff brought this action against the defendant to recover damages for personal injuries sustained as a result of being run down by an automobile owned by defendant and driven by chauffeur Harry Gilmore. By its answers to questions submitted on a special verdict the jury found as follows:

1. That plaintiff was struck by an automobile owned by the defendant and which was being driven by Harry Gilmore, the chauffeur, on the night of May 31, 1915, causing the injuries complained of.

2. That Harry Gilmore was actually in the prosecution of the defendant's business and in the furtherance of his interests at the time and place of the collision.

3. That at the time or immediately prior to the time of the collision the automobile was being driven at the rate of twenty-one miles per hour.

4. That the oil dash or side lights and the tail lights were lighted.

5. That Harry Gilmore was wanting in ordinary care in driving and managing the defendant's automobile immediately prior to and at the time of the collision.

6. That such want of ordinary care was the cause of plaintiff's injuries.

7. That want of ordinary care on the part of the plaintiff did not proximately contribute to her injuries.

8. That the damages were $8,000.

After verdict and upon motion of the defendant the court changed the answer of the jury to question number 2 from

Yes to No, and on the verdict as so changed ordered judgment for the defendant, from which judgment plaintiff appeals.

For the appellant there was a brief by *Cochems & Wolfe* and *Fred Landeck,* attorneys, and *Peter C. Kolinski,* of counsel, all of Milwaukee, and oral argument by *Mr. Kolinski* and *Mr. II. F. Cochems.*

*Burr J. Scott* and *Paul D. Durant,* both of Milwaukee, for the respondent.

ROSENBERRY, J. . It is claimed that the trial court erred in changing the answer to question number 2 of the special verdict, for the reason that the evidence was sufficient to sustain the finding of the jury made in response to that question. Stating the facts as they appear from the testimony, resolving any controversies or doubts in favor of the appellant, we have the following: The chauffeur, Gilmore, had been employed by the defendant for about a year and a half preceding the time of the accident. Gilmore's home was four and one-half miles distant from respondent's home, and Gilmore was the owner of a car in which he was accustomed to drive to and from his work. The respondent had two cars and a garage with storage facilities for two cars only. Gilmore had been accustomed to make slight repairs upon his own car in respondent's garage, and on the day in question he had taken his car apart for the purpose of repairing it. He was summoned to the performance of his duties and did not return to the garage until late in the evening, at which time respondent told him that his services would not be further required that evening. Gilmore's car not being in condition to run, he asked the respondent if he could take his roadster for the purpose of returning home and coming back to his work in the morning, and in response to such request the respondent gave his permission for such use. Gilmore told respondent that he had a garage at his home in

which he could store the roadster over night. The accident to plaintiff occurred while Gilmore was on his way home. It appeared that Gilmore was not to do any errands or perform any service whatever for respondent on the way to and from his home, but was simply to use the roadster for the purpose of going and returning. It further appears that Gilmore could have gone to his home by street car in about forty-five minutes, while the trip by automobile occupied from twenty to twenty-five minutes.

Appellant concedes that the chauffeur, Gilmore, was performing no service for respondent, but argues that, because respondent permitted the use of his automobile under the circumstances stated, and thus accommodated Gilmore, Gilmore would naturally be more attached to respondent, more faithful in the performance of his duties and a better chauffeur, and more likely to care for the welfare of respondent's family than if the very reasonable request made by Gilmore had been refused, and that the work of the master was facilitated thereby.

This contention is not tenable. A large number of cases have been cited to our attention from other jurisdictions. While we have examined them, we shall not analyze them or refer to them here. The question presented in this case is clearly ruled in favor of respondent by *Steffen v. McNaughton,* 142 Wis. 49, 124 N. W. 1016. In order to create a liability for the use of the automobile of the master by the servant two things must appear: first, the use must be with the knowledge and consent of the master; and second, it must be used within the scope of the employment and to facilitate the master's business. While it is true that fair and generous treatment on the part of the master is likely to produce a corresponding sense of loyalty on the part of the servant, it cannot be said that such treatment of a servant by a master in any way promotes or facilitates the master's business in a legal sense. It is to the benefit of both master and servant

that their relationship should be pleasant and harmonious, but the effort of the master to accommodate and assist the servant does not bring within the scope of the master's employment acts of the servant otherwise without such scope. Therefore we think the circuit court was clearly right in setting aside the answer to question number 2 and rendering judgment on the verdict as thus amended.

*By the Court.*—Judgment affirmed.