FINSLAND and others, Appellants, v. PHILLIPS PETROLEUM COMPANY and another, Respondents.

*No. 304. Argued January 3, 1973.—Decided February 8, 1973.*
(Also reported in 204 N. W. 2d 1.)

For the appellants there was a brief by *Borg, McGill & Moodie* of Superior, and oral argument by *Douglas S. Moodie.*

For the respondents there was a brief by *Davis, Witkin, Foley & Weiby* of Superior, and oral argument by *Harold Witkin.*

ROBERT W. HANSEN, J. This is not an action brought by an employee against his employer for benefits provided under the Workmen's Compensation Act. It is

a third-party action alleging that an employer is liable for a negligent act committed by an employee while such employee was engaged in carrying on the work of the employer.

If this were a workmen's compensation case, the test would be whether at the time of injury the employee was performing service "growing out of and incidental to his employment." [1] This is a broader base of employer liability than the common-law test which is whether the employee was acting "within the scope of employment." [2]

Since this is a third-party action against an employer for an employee's act of negligence, the statutorily prescribed broader test does not apply. [3] Rather, the

[1] Sec. 102.03 (1) (c), Stats.

[2] *Butler v. Industrial Comm.* (1953), 265 Wis. 380, 384, 61 N. W. 2d 490, stating: "Workmen's compensation is not confined by common-law conceptions of scope of employment," citing with approval *Edwards v. Louisiana Forestry Comm.* (1952), 221 La. 818, 826, 60 So. 2d 449, 451, referring to ". . . the modern judicial concept of compensation legislation, which is based on the premise that the phrase 'arising out of the employment' does not have the same connotation as the common-law 'scope of employment,' the interpretation earlier attributed to it, but means, instead, the employment viewed from any aspect—its nature, conditions, obligations and incidents. . . ."

[3] *Kamp v. Curtis* (1970), 46 Wis. 2d 423, 431, 175 N. W. 2d 267, stating: ". . . This court, as early as *Butler v. Industrial Comm.* (1953), 265 Wis. 380, 383, 384, 61 N. W. 2d 490, recognized that the principles of the common-law doctrine of *respondeat superior* were different from those applicable to workmen's compensation cases." *See also:* cited case of *Butler v. Industrial Comm., supra,* stating at page 384: ". . . Whether an employee is acting within the scope or course of his employment is usually determinative of the issue of whether his employer should be held liable in damages for his employee's wrongful act, but is not necessarily controlling in determining whether an employer should be held liable under the Workmen's Compensation Act if the employee is injured. . . ."

test of *respondeat superior* applies.[4] Thus, in this type of action, to prevail the plaintiff must establish that the employee was acting "within the scope of his employment" at the point in time and place involved in plaintiff's claim.[5]

While it seems a long way to go to get a money order, the twenty-mile trip from the service station in Duluth to the Globe News office in Superior, clearly was a trip made by the employee acting "within the scope of his employment." However, the problem arises because the employee deviated or detoured from the trip to the news office in order to go to his home and pick up his wife.

Plaintiff's brief concedes that ". . . It is true that there was a 'physical and geographical deviation' from the most direct route from the station in Duluth to the Globe News where the money order was to be purchased. . . ." It is clear that there was. It is equally clear that the physical deviation was entirely for the employee's own purpose. It is not claimed that deviation to pick up the wife in any way served the employer's interest or was within the scope of employment. The general rule as to such deviation for a purely personal purpose has been stated to be:

[4] *Wuorinen v. State Farm Mut. Automobile Ins. Co.* (1972), 56 Wis. 2d 44, 52, 53, 201 N. W. 2d 521, stating: ". . . The appellants' position is that the 'broader tests' and the 'dual purpose test' adopted in workmen's compensation cases are the controlling law. . . .

"This is not a workmen's compensation case so neither the broader test of employment nor the dual purpose doctrine are controlling. Rather, the principles of the common-law doctrine of *respondeat superior* apply. . . ."

[5] *Gewanski v. Ellsworth* (1917), 166 Wis. 250, 253, 164 N. W. 996, stating: ". . . In order to create a liability for the use of the automobile of the master by the servant two things must appear: first, the use must be with the knowledge and consent of the master, and second, it must be used within the scope of the employment and to facilitate the master's business. . . ."

"The general rule is that if an employee who is delegated to perform certain work for his employer steps or turns aside from his master's work or business to serve some purpose of his own, not connected with the employer's business, or, as it is often expressed, deviates or departs from his work to accomplish some purpose of his own not connected with his employment, the relation of master and servant is thereby temporarily suspended, and the master is not liable for his acts during the period of such suspension. The employee is then acting upon his own volition, obeying his own will, not as a servant, but as an independent person, even though he intends to and does return to his employer's business after he has accomplished the purpose of his detour from duty. . . ." [6]

We concur with the trial court's finding that, as a matter of law, at the time of the accident, when Hunter was proceeding from his home to his mother's home to pick up his wife, the employee in this case had deviated [7] and was not acting within the scope of his employment

[6] 53 Am. Jur. 2d, *Master and Servant*, p. 449, sec. 430, Deviation or departure from master's business for employee's own purpose, also stating: ". . . The test of the employer's liability for the act of an employee who departs from the employer's business for purposes of his own is whether he was engaged in his employer's business at the time of the accident, and not whether he proposed to resume it. The employee is, so long as he is engaged in affairs of his own or is pursuing some purpose unrelated to his master's business, acting as much outside the scope of his employment as he would be were his working day ended, or his task completed, and thus his employer is relieved from liability for consequence of any tortious conduct committed by the employee during that period, however short it may be."

[7] *See: Kosteczko v. Industrial Comm.* (1953), 265 Wis. 29, 31, 60 N. W. 2d 355, stating: ". . . By such action he [the employee] deviated from the course of his employment. . . ." *See also: Eckel v. Richter* (1926), 191 Wis. 409, 412, 211 N. W. 158, stating: ". . . if the servant steps aside and proceeds to serve some purpose of his own, the master is not liable." (Citing *Firemen's Fund Ins. Co. v. Schreiber* (1912), 150 Wis. 42, 135 N. W. 507.)

as service station manager.[8] Where an employee thus steps aside and proceeds to serve some purpose of his own, the rule is that the employer is not liable for the employee's acts of negligence during the detour.[9]

Conceding a "physical and geographical deviation," plaintiff's counsel argues that there is here "no mental or intentional deviation from the intent to serve his master." The driver, plaintiff's brief submits, "had a 'dual purpose' combining business with a personal errand." This is not a case, we are told, where an employee on a prefixed route, "part way through such fixed route decided suddenly to go some place for an errand of his own unconnected with the master's service."

The invitation is to define detour or deviation as necessarily a spur-of-the-moment proposition. If one intended from the outset to make the detour on a personal mission, the claim is there can be no deviation because the trip had two purposes—one for the employer and one personal—from its beginning. Whether the deviation was for a drink or a visit or, as here, to pick up the wife, what he did and why he did it would be-

[8] *Adams v. Quality Service Laundry & Dry Cleaners* (1948), 253 Wis. 334, 336, 34 N. W. 2d 148, stating: ". . . We think it perfectly clear from the record that at the time of the accident Skaar was not acting within the scope of his employment with the Laundry Company. . . ." (where driver was using laundry truck to secure spare parts for the repair of his own car). *See also: Eckel v. Richter, supra*, page 412, stating: "The departure of the servant from the scope of his employment may as measured in terms of time or space be very slight, nevertheless if the act performed be one in furtherance of his own purposes and without the scope of his employment the master is not liable." (Citing *Seidl v. Knop* (1921), 174 Wis. 397, 182 N. W. 980.)

[9] *Barragar v. Industrial Comm.* (1931), 205 Wis. 550, 553, 238 N. W. 368, stating: ". . . In case . . . there are any detours for purely personal objectives, such detours must be separated from the main trip and the employee held to be outside the scope of his employment during such detour. . . ."

come inconsequential. The important consideration would be when he made up his mind to do it. All joyrides on one's own would no longer be detours—at least not such if they were in mind when the trip began. Going off-route for a few beers would be no detour if one had planned at the outset to get thirsty at that exact juncture in the journey.

To begin with, this court has recently held that the "dual purpose doctrine" is not to be "controlling" in third-party actions against an employer for acts of negligence of his employee.[10] Even if it were, the double purpose concept, in this state, has not been stretched as far as counsel would stretch it. The Wisconsin case plaintiff relies upon, *Eckel v. Richter*,[11] involved a situation where an employee used the employer's car to go home for lunch and also to deliver meat ordered by his family from the employer. This court noted that ". . . had Ohlson not gone to his home for his noon meal he would have been compelled to make the trip to deliver the meat. . . ." In finding a double purpose to the single trip made, this court stated the test to be:

"Being engaged in the use of the defendant's automobile for a double purpose and *having done or performed no act inconsistent with the prosecution of his employer's business,* which was one of the purposes for which the automobile was taken, he was at the time of the accident acting within the scope of his employment and in furtherance of the master's business."[12] (Emphasis supplied.)

Whether viewed as a single purpose or dual purpose trip, we see in *Eckel* no substantial departure from serv-

---

[10] *See:* footnote 4, citing *Wuorinen v. State Farm Mut. Automobile Ins. Co.*, holding: "This is not a workmen's compensation case so neither the broader test of employment nor the dual purpose doctrine are controlling." (p. 53)

[11] (1926), 191 Wis. 409, 211 N. W. 158.

[12] *Id.* at page 413.

ing the employer's purpose of having the meat delivered to the family that had ordered it. Long ago, in this state, it was held that, to constitute a deviation from the employer-serving purpose of a trip, the detour ". . . must be so substantial as to amount to a departure therefrom and for purposes entirely personal to the servant. . . ." [13] In the case before us, when the station manager detoured the eight blocks to his home and had an accident on the way from his home to his mother's home, where he intended to pick up his wife, there was a substantial enough detour—and a departure from any purpose related to the employer. The purpose served by the deviation was entirely personal to the employee.

Recently, in *Wuorinen*,[14] this court reaffirmed what it earlier stated in *Strack v. Strack*,[15] to wit, that the "controlling principle" in defining "within the scope of employment" can be stated as follows:

"Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." [16]

In *Strack,* the court concluded: ". . . Not only is there 'little' actuation by a purpose to serve the master—there is no such purpose at all." [17] When the driver here deviated or detoured eight blocks to go to his home, and, at the time of the accident, was on his way from

[13] *Thomas v. Lockwood Oil Co.* (1921), 174 Wis. 486, 492, 182 N. W. 841.

[14] *Wuorinen v. State Farm Mut. Automobile Ins. Co., supra,* at page 54.

[15] (1961), 12 Wis. 2d 537, 541, 107 N. W. 2d 632.

[16] Restatement, 1 *Agency* 2d, p. 504, sec. 228 (2), cited and quoted in *Wuorinen v. State Farm Mut. Automobile Ins. Co., supra,* at page 54, and *Strack v. Strack, supra,* at page 541.

[17] *Strack v. Strack, supra,* at page 541.

his home to his mother's house to pick up his wife, we agree with the trial court that no purpose of the employer—no purpose at all—was being served. For an act of negligence of the employee occurring during such substantial detour for a purely personal purpose, the employer is not liable.

*By the Court.*—Judgment affirmed.