**Cornell BARRY, Plaintiff,**

v.

**Brian STEVENSON and American Family Mutual Insurance Company, Defendants.**

No. 96–C–205.

United States District Court, E.D. Wisconsin.

May 16, 1997.

Mark J. Leuck, Adrian P. Schoone, Schoone, Fortune & Leuck, Racine, WI, for Plaintiff.

Penelope C. Fleming, Asst. U.S. Atty., Milwaukee, WI, for Defendants.

## DECISION AND ORDER

CURRAN, District Judge.

Cornell Barry is suing Brian Stevenson and American Family Mutual Insurance Company for injuries he sustained on June

15, 1993, while he was a passenger in a HMMWV military truck driven by Stevenson. At the time of the accident, Barry and Stevenson were both members of the Wisconsin Army National Guard and were participating in annual training at Fort McCoy, Wisconsin.

## I. *SUBSTITUTION*

After Barry filed this case in the Circuit Court of Walworth County (Wisconsin), the United States of America removed the action to federal court and moved to substitute itself as the sole defendant pursuant to the Westfall Act.[1] The Westfall Act, which is part of the Federal Tort Claims Act, (FTCA), *see* 28 U.S.C. §§ 1346(B) & 2671–80(a)–(h), requires that the United States be substituted as the Defendant if the Attorney General certifies that the alleged tortfeasor was a federal employee who was acting in the course of his employment when the injury occurred. *See* 28 U.S.C. § 2679(d)(2). Barry opposes the substitution on the ground that Stevenson had taken a detour from his employment at the time of the accident.

The United States may not be sued without its consent. *See United States v. Testan*, 424 U.S. 392, 393, 96 S.Ct. 948, 951, 47 L.Ed.2d 114 (1976). However, the FTCA waives the United States' sovereign immunity in actions arising out of tortious conduct by governmental employees who are acting within the scope of their office or employment, under circumstances in which the United States, if a private person, would be liable to the Plaintiff under the law of the place where the tortious act occurred. *See, e.g.,* 28 U.S.C. §§ 1346(b) & 2674. The scope of this waiver is limited by exceptions contained in the FTCA itself and by judicial interpretation and application of the FTCA. *See Shaw v. United States*, 854 F.2d 360, 361 (10th Cir.1988).

The Westfall Act provides that "certification of the Attorney General shall conclusively establish scope of employment for purposes of removal." 28 U.S.C. § 2679(d)(2). Nevertheless, the Plaintiff is entitled to challenge the certification because the Attorney General's certification is not conclusive for purposes of substitution. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, ——, 115 S.Ct. 2227, 2236, 132 L.Ed.2d 375 (1995). When certification has been challenged, the Plaintiff has the burden of proving by a preponderance of the evidence that the Defendant was acting outside the scope of his employment. *See Brown v. Armstrong*, 949 F.2d 1007, 1012 (8th Cir. 1991); *Hamrick v. Franklin*, 931 F.2d 1209, 1211 (7th Cir.), *cert. denied*, 502 U.S. 869, 112 S.Ct. 200, 116 L.Ed.2d 159 (1991). The FTCA requires the court to resolve the "scope of employment" issue, *see* 28 U.S.C. § 2679(d)(3), by applying the forum state's law governing the doctrine of *respondeat su-*

---

1. The Westfall Act, also known as the Federal Employees Liability Reform and Tort Compensation Act, provides, in relevant part, that:

    (b)(1) The remedy against the United States provided by [the Federal Tort Claims Act] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

    (2) Paragraph (1) does not extend or apply to a civil action against an employee of the Government—

    (A) which is brought for a violation of the Constitution of the United States, or

    (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.

    (c) The Attorney General shall defend any civil action or proceeding brought in any court against any employee of the Government or his estate for any such damage or injury.

    (d)(1) Upon certification by the Attorney General that the defendant employee was acting in the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such a claim in the United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

    28 U.S.C. § 2679(b), (c) & (d)(1).

*perior. See* 28 U.S.C. § 2674. *See also generally Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam). Because both sides submitted competent evidence supporting their differing positions on the scope of employment issue, the court held an evidentiary hearing to resolve the dispute. *See Melo v. Hafer,* 13 F.3d 736, 747–48 (3d Cir.1994).

■ Under Wisconsin law, "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Wuorinen v. State Farm Mutual Automobile Insurance Company,* 56 Wis.2d 44, 54, 201 N.W.2d 521, 526 (1972) (quoting Restatement (Second) of Agency § 228(2) (1957)). The Wisconsin court has emphasized that "in scope of employment cases, consideration must be given to whether the employee was actuated, at least in part, by a purpose to serve the employer." *Olson v. Connerly,* 156 Wis.2d 488, 500, 457 N.W.2d 479, 484 (1990). The court explained that:

> [A]n employee may be found to have acted within the scope of his or her employment as long as the employee was at least partially actuated by a purpose to serve the employer. There is no requirement that serving the employer must be the employee's only purpose or even the employee's primary purpose. Rather, an employee's conduct is not within the scope of his or her employment if it is too little actuated by a purpose to serve the employer or if it is motivated entirely by the employee's own purposes (that is, the employee stepped aside from the prosecution of the employer's business to accomplish an independent purpose of his or her own).

*Id.* at 499–500, 457 N.W.2d 479.

■ Having reviewed the record and heard the testimony at the evidentiary hearing, the court finds that Stevenson was engaged in annual Army National Guard training at the time of the accident. He was driving a government vehicle on a tank trail on government property. On the day in question, he had transported machine guns to a location on the base and was returning to headquarters when he hit a dip in the tank trail and Barry, who was a passenger in the HMMWV, was injured.

Despite these circumstances, the Plaintiff contends that Stevenson was enjoying a "frolic" and "detour," as those terms are used in the law of agency, when the injury occurred. Barry says that Stevenson left the main road for an unimproved tank trail and that he began driving in the wrong direction and had to go back over the trail, including the dip where the accident occurred. The Plaintiff characterizes the ride as a diversionary "joy ride" rather than a military mission and points out that the occupants of the HMMWV were yelling and laughing as they passed over the rough places on the trail.

■ In Wisconsin, "to constitute a deviation from the employer-serving purpose of a trip, the detour ... must be so substantial as to amount to a departure therefrom and for purposes entirely personal to the servant." *Finsland v. Phillips Petroleum Company,* 57 Wis.2d 267, 276, 204 N.W.2d 1, 5–6 (1973) (quoting *Thomas v. Lockwood Oil Company,* 174 Wis. 486, 492, 182 N.W. 841, 843 (1921)). Here, Barry has not met his burden of proving that Stevenson was acting entirely for personal purposes. The testimony showed that Stevenson and his companions were driving back to headquarters from a work assignment on base. The main road was under construction, so taking the tank trail did not constitute a detour. Driving over dips and hollering and laughing when hitting the bumps are not significant events showing a complete departure from Stevenson's service to the Army. These factors lead the court to the firm conclusion that Stevenson was acting within the course of his employment when the injury occurred. Consequently, the court will grant the government's motion to substitute the United States as the sole Defendant in this action.

## II. *MOTION TO DISMISS*

The United States has renewed its motion to dismiss on the ground that the Plaintiff has failed to exhaust his administrative remedies under the Federal Tort Claims Act. Section 2675(a) of the Act provides that:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

In this case it is undisputed that the Plaintiff failed to file an administrative claim with the appropriate agency prior to filing suit in state court. The filing of an administrative claim is jurisdictional. *See Wollman v. Gross*, 637 F.2d 544, 546 (8th Cir.1980), *cert. denied*, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981). The claim must be filed within two years of the date upon which the claim accrues. *See* 28 U.S.C. §§ 2401(b) & 2675(a). In this case the injury to Cornell Barry occurred on June 16, 1993. The Plaintiff argues that accrual of his cause of action should be tolled until the Attorney General certified that Brian Stevenson was acting within the scope of his employment by the federal government, because, until that time, he did not know that Stevenson was serving as a federal employee. The Seventh Circuit, however, has rejected a "discovery rule" in a case in which a plaintiff knew he was injured, but did not know that the party who injured him was an employee of the federal government. *See Steele v. United States*, 599 F.2d 823 (7th Cir.1979). Moreover, Barry's "Notice of Claim" filed with the Attorney General of the State of Wisconsin on September 3, 1993, acknowledges that all three occupants of the vehicle in which Barry was injured "were engaged in the performance of military duty and in the pursuance of military duty." Brief in Support of Defendants' Motion for Substitution and Dismissal"

at Exhibit B. Consequently, Barry should have known that Stevenson was an employee of the United States Army at that time. The Notice of Claim also shows that Barry had retained an attorney shortly after the accident. Other circuits have explored a "diligence discovery"[2] rule or "blameless ignorance"[3] exception to the FTCA limitation period—mainly in medical malpractice actions. This is a harsh rule but Congress has left the court with no alternative. *See Wollman v. Gross*, 637 F.2d at 549 & n. 6 (FTCA statute of limitations requires diligence and requires a plaintiff to obtain appropriate legal counsel and, together with counsel, to discover the facts and their possible legal ramifications).

In rejecting a "blameless ignorance" defense in a traffic accident case, the Eighth Circuit explained that:

Admittedly this application of the statute of limitations has especially harsh ramifications here where the record indicates little prejudice to the government if it had to defend this lawsuit. However, to accept [the Plaintiff's] argument would be in effect rewriting the two-year statute of limitations of 28 U.S.C. § 2401(b) whenever plaintiff is unaware of the status of the defendant as a federal employee acting within the scope of his employment. While this may be desirable, Congress had clearly not chosen to do this and any change is its prerogative and not that of the courts.

*Wollman v. Gross*, 637 F.2d at 549.

In this case, Barry's claim accrued on June 16, 1993. He filed suit in state court on July 14, 1995, without filing a federal administrative claim in the interim. By the time the Plaintiff commenced his action in state court, the time for filing his administrative claim had already passed. The United States removed this action on February 27, 1996, and moved to substitute the United States as the

---

2. *See, e.g., United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Barrett v. United States*, 689 F.2d 324 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); *Guccione v. United States*, 670 F.Supp. 527 (S.D.N.Y.1987); *aff'd*, 847 F.2d 1031(2d Cir.1988), *cert. denied*, 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990).

3. *See, e.g., Gould v. U.S. Department of Health & Human Services*, 905 F.2d 738 (4th Cir.1990), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 673, 112 L.Ed.2d 666 (1991).

defendant on March 8, 1996. There is no evidence of lulling on the part of the United States or any other factor which would toll the time for filing an administrative claim. Under these circumstances, this action must be dismissed for lack of jurisdiction. See Federal Rule of Civil Procedure 12(b)(1). *See also generally McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).

### III. *FERES DOCTRINE*

■ Even if Barry had filed a timely administrative claim, the government believes that this action should be dismissed because the claims are barred by the *Feres* doctrine. *See Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In *Feres,* the United States Supreme Court held that claims for injuries which arise out of or are incident to military service are outside the FTCA's waiver of sovereign immunity. *Id.* at 146, 71 S.Ct. at 159.

Three rationales underlie the *Feres* doctrine: (1) the "distinctly federal" relationship between the government and members of its armed forces; (2) the existence of a uniform system of "generous statutory disability and death benefits" for members of the military; and (3) the need to preserve the military disciplinary structure and prevent judicial involvement in sensitive military matters. *United States v. Johnson,* 481 U.S. 681, 688–691, 107 S.Ct. 2063, 2067–2069, 95 L.Ed.2d 648 (1987); *see also United States v. Stanley,* 483 U.S. 669, 682–683, 107 S.Ct. 3054, 3063–3064, 97 L.Ed.2d 550 (1987). The three broad considerations underlying the *Feres* doctrine permeate the process of assessing whether the totality of the germane facts giving rise to a service member's claim occurred within the purview of a distinctly military sphere of activity or while a military relationship was in effect. *See Stephenson v. Stone,* 21 F.3d 159, 162 (7th Cir.1994).

In examining whether a service member's injuries were incurred "incident to service," federal law applies. *See Feres,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152. Courts consider various factors, with no single factor being dispositive. The individual's status as a member of the military at the time of the incident giving rise to the claim is relevant. *See, e.g., Persons v. United States,* 925 F.2d 292, 296 (9th Cir.1991) (barring medical malpractice claim because off-duty service member "enjoyed the use of the naval hospital solely by virtue of his status as a serviceman"); *Appelhans v. United States,* 877 F.2d 309, 311–12 (4th Cir.1989) (barring medical malpractice claim of service member on excess leave pending discharge).

The courts have also considered such factors as the relationship of the activity to the individual's membership in the service, as well as the location of the conduct giving rise to the underlying tort claim. *See e.g.,Bozeman v. United States,* 780 F.2d 198, 200–01 (2d Cir.1985) (barring claim arising from automobile crash caused by service members' intoxication at a military club even though accident occurred off base while the service member was off duty); *Walls v. United States,* 832 F.2d 93, 95–96 (7th Cir.1987) (barring claim for injuries sustained while traveling to visit family in airplane leased from military club). Also relevant is whether the activity is limited to military personnel and whether the service member was taking advantage of a privilege or enjoying a benefit conferred as a result of military service. *See, e.g., Sanchez v. United States,* 878 F.2d 633, 637 (2d Cir.1989) (barring claim for negligent servicing of automobile where use of base service station was limited to service members and civilians connected with military mission and suit would involve impermissible civilian inquiry into policies and procedures for operation of military controlled facility). The Seventh Circuit has "consistently found that a service-member's injury is incident to military service whenever the injury is incurred while the individual is on active duty or subject to military discipline." *Stephenson v. Stone,* 21 F.3d 159, 162 (7th Cir.1994). The concept of "military discipline" is broadly applied under the *Feres* doctrine. A service member need not be acting under direction of command. *See United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). "[M]ilitary discipline involves not only obedience to orders, but more general duty and loyalty to

one's service and to one's country." *Johnson,* 481 U.S. at 691, 107 S.Ct. at 2069.

In assessing whether Barry's claims are barred as incident to military service, the court will examine the facts in the record in light of the three broad rationales underlying the *Feres* doctrine. The record shows that both Stevenson and Barry were serving in the Army National Guard at the time of the accident. Thus, both were unquestionably on military status. *See Duffy v. United States,* 966 F.2d 307, 312 (7th Cir.1992). Because of the special federal character of the relationship between the government and its military personnel, there is a significant interest in basing recovery on the uniform federal standards that govern compensation to injured service members rather than on a hodgepodge of divergent state laws depending on where the injury arose. *See Johnson,* 481 U.S. at 689, 107 S.Ct. at 2068. Since Barry was on duty status and was engaging in activity related to his military obligations when he was injured, he possessed the "distinctly federal" relationship with the government that underlies the rationale of *Feres.* *See Stewart v. United States,* 90 F.3d 102 (4th Cir.1996).

Military discipline and autonomy are also concerns in this action. Both Barry and Stevenson were traveling in a military vehicle on the Fort McCoy base on a trail maintained by the military at the time Barry was injured. The purpose of the trip was to return to headquarters after delivering machine guns to another base location. While on National Guard duty and while on base, Stevenson and Barry were subject to military discipline. Barry's suit would undoubtedly implicate military judgments concerning the proper use of military vehicles such as the one involved in the accident. The *Feres* doctrine was intended to avoid civilian court scrutiny of military discipline and policies such as those necessarily implicated by an accident in a military vehicle driven by a member of the military. See *Wake v. United States,* 89 F.3d 53, 62 (2nd Cir.1996); *Shaw v. United States,* 854 F.2d 360 (10th Cir. 1988). Taken together, these facts, viewed in light of the policies underlying, warrant the conclusion that Barry's injury was incurred incident to his military service. Consequently, the *Feres* doctrine operates to bar Barry's case.

### ORDER

For the reasons explained above, the court ORDERS that the United States of America's "Motion to Substitute the United States of America as the Named Defendant" (filed August 26, 1996) IS GRANTED. The United States of America is substituted as the Defendant in the place of Brian Stevenson and American Family Mutual Insurance Company.

IT IS FURTHER ORDERED that the Defendant's "Motion to Amend Caption" (filed August 26, 1996) IS GRANTED.

IT IS FURTHER ORDERED that the "United States of America's Motion to Dismiss" (filed March 8, 1996 and renewed) IS GRANTED. This action is dismissed for lack of jurisdiction. *See* Federal Rule of Civil Procedure 12(b)(1).

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter a final order of dismissal as a separate document. This order shall provide that:

This action brought by Plaintiff Cornell Barry against Defendant United States of America came before the court, the Honorable Thomas J. Curran, District Judge, presiding, for a hearing and the issues having been heard and a decision having been issued,

IT IS ORDERED

that this action is dismissed.